UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN MEYER and JULIE
MEYER,

       Plaintiffs,

vs.                                                                    Case No. 11-13432

CITIMORTGAGE, INC., and                          HON. AVERN COHN
FEDERAL HOME LOAN MORTGAGE
CORPORATION,

       Defendants.
_____/

## MEMORANDUM AND ORDER
## GRANTING DEFENDANTS' MOTION TO DISMISS (Doc. 10)
## AND DISMISSING CASE[1]

I.  Introduction

This is another of one of many cases pending in this district involving a default on

a mortgage and the commencement of foreclosure proceedings.  Plaintiffs Kevin Meyer

and Julie Meyer are suing defendants Citimortgage, Inc. (CMI), and Federal Home Loan

Mortgage Corporation (Freddie Mac) making several claims relating to the mortgage

and foreclosure proceedings.  The amended complaint alleges seventeen

counts, phrased by plaintiffs as follows:

COUNT 1 – MI FORECLOSURE BY ADVERTISEMENT STATUTE

COUNT 2 – MI STATUTORY MODIFICATION LAW

---

[1]Although originally scheduled for hearing, the Court deems this matter
appropriate for decision without oral argument.  See Fed. R. Civ. P. 78(b); E.D. Mich.
LR 7.1(f)(2).

COUNT 3 – DECLARATORY RELIEF – FAILURE OF
CONDITION PRECEDENT – CODE OF FEDERAL REGULATIONS

COUNT 4 – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

COUNT 5 – CIVIL CONSPIRACY

COUNT 6 –REAL ESTATE SETTLEMENT PROCEDURES ACT

COUNT 7 – MI MORTGAGE BROKERS, LENDERS, AND SERVICERS
LICENSING ACT

COUNT 8 – DECLARATORY RELIEF - FORECLOSURE BARRED BY
UNCLEAN HANDS

COUNT 9 – BREACH OF CONTRACT - IMPLIED DUTY OF GOOD FAITH AND
FAIR DEALING

COUNT 10 – NO PROOF OF OWNERSHIP OF LOAN/AUTHORITY TO
FORECLOSE

COUNT 11 –FEDERAL FAIR DEBT COLLECTION PRACTICES ACT

COUNT 12 – MI FAIR DEBT COLLECTION PRACTICES ACT

COUNT 13 - INTENTIONAL FRAUD

COUNT 14 - CONSTRUCTIVE FRAUD

COUNT 15 – PROMISSORY ESTOPPEL

COUNT 16 - MI CONSUMER PROTECTION ACT

COUNT 17 – UNJUST ENRICHMENT

Before the Court is defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6).

For the reasons that follow, the motion will be granted.

## II.  Background

On September 16, 2002, plaintiffs received a residential mortgage loan from ABN

AMRO Mortgage Group, Inc. (ABN AMRO) in the amount of $129,7000 to purchase real

2

property in Westland, Michigan.  Plaintiffs signed a note evidencing their obligation to pay ABN AMRO as the lender.  As security for repayment of the loan, plaintiffs executed a mortgage in favor of ABN AMRO which encumbered the property.  CMI is the successor by merger to ABN AMRO.  Federal Home Loan Mortgage Corporation ("Freddie Mac") is a corporate instrumentality of the United States and is the investor in the loan.[2]  Plaintiffs failed to make the payments required by the note. Accordingly, CMI commenced foreclosure proceedings, including scheduling a Sheriff's sale for July 27, 2011.  However, plaintiffs filed this case on July 26, 2011 in state court, and obtained an ex parte order enjoining the Sheriff's sale.  CMI and Freddie Mac removed the case to this Court on August 8, 2011.  On August 15, 2011, the Court, upon the stipulation of the parties, ordered that the Sheriff's sale not occur during the pendency of the case. (Doc. 4.)

On September 8, 2011, plaintiffs filed an Amended Complaint.  (Doc. 8.) Defendants then filed the instant motion to dismiss the Amended Complaint under Fed.

---

[2]Freddie Mac's role in the mortgage is not clear.  Plaintiffs allege that although the note and mortgage were executed between plaintiffs and ABN AMRO, there was "a prearranged agreement for Freddie Mac to purchase the loan."  Amended Complaint at ¶ 8.  Defendants state in their motion that Freddie Mac "is the investor in the Loan." Doc. 10, Brief at p. 2.  Attached as Exhibit 4 to defendants' motion is a blank document entitled "Commitment to Purchase Financial Instrument and Servicer Participation Agreement."  That document is a form agreement in which a lender, such as ABN AMRO or CMI, agrees to act as a "servicer" of a loan and Freddie Mac agrees to purchase the loan.  It is not clear that this was done with plaintiffs' loan, as there is no document between ABN AMRO or CMI and Freddie Mac relative to plaintiffs' loan. Moreover, the form document appears to be for FHA insured loans.  Defendants state, and plaintiffs have not contested, that plaintiffs' loan is not FHA insured.  See Doc. 10, Brief at p. 6 n.4.   Finally, while plaintiffs use the term "defendants" under most of the counts of the Amended Complaint, they do not appear to make specific allegations against Freddie Mac.

3

R. Civ. P. 12(b)(6). (Doc. 10).

### III.  Legal Standard[3]

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007).  See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir.2007). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." Aschcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1950 (internal quotation marks and citation omitted).  Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  Id.  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity

---

[3] Plaintiffs appear to argue that defendants' motion is a motion for summary judgment because of the inclusion of documents referenced in, but not attached to, the Amended Complaint.  However, it is well established that Court may consider such materials in a pleadings-based motion.  Greenberg v. Life Ins. Co. of Va., 177 F.3d 507, 514 (6th Cir. 1999); Weiner v. Klais & Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997). Moreover, to the extent plaintiffs argue the motion should be denied because they need discovery, this argument is misguided.  As explained fully infra, plaintiffs' claims fail to state a claim upon which relief may be granted; no amount of discovery changes that conclusion.  In short, plaintiffs cannot survive a pleadings-based motion by simply asserting that discovery is required.  See New Albany Tractor, Inc. v. Louisville Tractor, Inc., 650 F.3d 1046, 1051 (6th Cir. 2011).

and then determine whether they plausibly give rise to an entitlement to relief." Id. In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Id. at 1949 (internal quotation marks and citation omitted).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of which a court may properly take notice, (3) public documents, and (4) letter decisions of government agencies may be appended to a motion to dismiss. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S.Ct. 2499, 2509 (2007). Here, the Court has considered documents relating to the mortgage and the foreclosure which are referenced in the complaint and central to plaintiff's claims.

IV.  Analysis

The counts in the complaint are addressed below.[4]

A.  Counts 1, 2, 10 - Claims Challenging Defects in the Foreclosure

Defendants say that plaintiffs' claims challenging the foreclosure (Counts 1, 2, and 10) should be dismissed because plaintiffs have failed to identify any error surrounding the foreclosure, and because plaintiffs seek relief not contemplated by Michigan's foreclosure statutes.  The Court agrees.

_____

[4]It appears that plaintiffs did not specifically address the following claims in their response:  Count 6 - claiming violations of the Real Estate Settlement Procedures Act; Count 7, claiming violations of the Mortgage Brokers, Lenders, and Servicers Licensing Act, Count 11, claiming violations of the Fair Debt Collection Practices Act, Count 12, claiming violations of the Michigan, Count 16, claiming violations of the Michigan Consumer Protection Act, and Count 17, claiming unjust enrichment.  However, for completeness, and in an exercise of caution, the Court will address these claims.

First, to the extent plaintiffs challenge the validity of the Sheriff's sale, such a claim is not ripe because a sale that has not yet occurred. "Under the ripeness doctrine, a matter is considered premature for judicial review when the alleged injury is speculative or may never occur." Kallstrom v. City of Columbus, 136 F.3d 1055, 1068 (6th Cir. 1998). Plaintiffs cannot use this forum to invalidate a sale that has not occurred.

Ripeness aside, plaintiffs' contention that a sale would be improper because there is not a recorded assignment from ABN AMRO to CMI is misguided. Plaintiffs are mistaken as to the relationship between ABN AMRO and CMI. ABN AMRO did not assign its interest to CMI; instead, ABN AMRO merged into CMI and brought its interest in the loan along with it. As explained in defendants' papers and exhibits, ABN AMRO merged into CMI, a New York Corporation, on September 1, 2007. (See Defendants' Exhibit 3, Certification of Merger) Under New York Business Corporation law, after a merger, the surviving corporation – in this case CMI – obtains "all the rights, privileges, immunities, powers" of the merging entity, and "[a]ll the property, real and personal, including subscriptions to shares, causes of action and every other asset of each of the constituent entities, shall vest in such surviving or consolidated corporation without further act or deed." NY Business Corporations § 906(b)(1), (2) (2003); see also American Cement Corp v. Dunetz Bros, Inc., 47 Misc. 2d 747, 750-51, 263 N.Y.S.2d 119 (N.Y. Sup. Ct. 1965) (holding that a lien assignment was not required after a merger.) Thus, there is no need for a recorded assignment because the mortgage has not been assigned.

Further, both the Michigan Court of Appeals and the Michigan Attorney General

have considered the issue in the context of Michigan's foreclosure by advertisement statutes, and concluded that no assignment from the merging entity into the surviving entity is required for the purposes of compliance with M.C.L. 600.3204(3).  See Winiemko v. GE Capital Mortgage Serv., Inc., No 177827, 1997 WL 33354482, at * 2 (Mich. Ct. App. Jan. 17, 1997); 2004 Mich. O.A.G. No. 7147; 2004 WL 79109 (Jan 9, 2004).  Thus, CMI has the right to initiate a Sheriff's sale under M.C.L. § 600.3204(3).

Moreover, plaintiffs claim that defendants have violated Michigan's loan modification statutes, M.C.L. 600.3205a, et seq., also fails.  First, these statutes merely require a lender to consider a borrower for a loan modification prior to commencing foreclosure by advertisement.  See M.C.L. 600.3205c.  These statutes do not require a lender to modify a loan, nor do they give a plaintiff a cause of action for damages.  See also Adams v. Wells Fargo Bank, N.A., No. 11–10150, 2011 WL 3500990, at * 4 (E.D. Mich. Aug. 10, 2011) (unpublished).  Second, a failure to comply with these statutes would not invalidate a pending Sheriff's sale.  The statutes include a specific enforcement mechanism that provides the borrowers with an opportunity to request judicial foreclosure if the foreclosing party does not comply with the loan modification provisions.  M.C.L. 600.3205c(8).  However, plaintiffs have not requested a judicial foreclosure.  Unless the borrower files a complaint seeking such relief, which plaintiffs have not done, nothing prevents the lender from foreclosing.  Id.

Additionally, plaintiffs have not alleged facts showing that they qualified for a loan modification under M.C.L. 600.3205a, et seq.  Instead, plaintiffs offer the conclusory statement that they qualified for a modification, without offering any facts showing why they believe they qualified, or how any decision to not modify the loan violated the

7

statutes. (Amended Complaint at  ¶¶ 44-50.).  This is insufficient to state a claim for relief.  See Iqbal, 129 S. Ct. at 1949.

In response to the motion, plaintiffs argue that a servicing agent cannot be the mortgagee of record.  (Doc. 12, Response p. 6-8.).  This argument is not well taken. M.C.L. 600.3204(1)(d) expressly holds that the "party" foreclosing the mortgage may be the servicer.  Michigan law has affirmed that the foreclosing mortgagee of record, in this case CMI, may be a different entity than one that possesses an ownership interest in the underlying debt.  Residential Funding Co., LLC v. Saurman, 490 Mich. 909 (2011) (affirming that the mortgagee of record, even one that is a nominee possessing no ownership interest, may foreclose by advertisement as the mortgagee of record, and that "[i]t has never been necessary that the mortgage should be given directly to the beneficiaries."  (internal quotations omitted)).  As the mortgagee of record, CMI can properly foreclosure by advertisement.

Overall, plaintiffs' claims concerning defects in the foreclosure (Counts 1, 2, and 10)) must be dismissed.

### B.   Count 3 - Federal Law Violations

Defendants contend that plaintiffs' claim under Count 3 alleging defendants violated certain federal regulations must be dismissed because plaintiffs do not have a private right of action to enforce these regulations.  The Court agrees.

The regulations cited by plaintiffs identify "acceptable" servicing practices concerning FHA-insured loans, and govern the relationship between the Department of Housing and Urban Development ("HUD") and its approved mortgagees. 24 C.F.R. § 203.500.  It is well-established that the National Housing Act and attending regulations

8

do not expressly or implicitly create a private right of action to mortgagors for a mortgagee's noncompliance with the Act or regulations. Federal Nat. Mortg. Ass'n v. LeCrone, 868 F.2d 190, 193 (6th Cir. 1989) (no express or implied right of action in favor of the mortgagor exists for violation of HUD mortgage servicing policies); Manufacturers Hanover Mortgage Corp v. Snell, 142 Mich. App. 548, 554 (1984). Count 3 must be dismissed.[5]

### C.  Count 4 - Intentional Interference with Contractual Relations

To state a claim for intentional interference with contractual relations plaintiffs must plead "(1) a contract, (2) a breach, and (3) an unjustified instigation of the breach by the defendant." Mahrle v. Danke, 216 Mich. App. 343, 350 (1996). Similarly, tortious interference with a business relation requires: "the existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy; knowledge of the relationship or expectancy on the part of the interferer; an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted." Woody v. Tamer, 158 Mich. App. 764, 778 (1987) (internal quotations omitted). "[O]ne who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." Formall, Inc. v. Community Nat'l

---

[5]Defendants also point out that this claim fails because the cited regulations apply only to FHA insured mortgages. See 24 C.F.R. § 203.500. Because defendants say that plaintiffs' loan is not FHA insured, the regulations do not apply.

Bank of Pontiac, 166 Mich. App. 772, 779 (1988) (internal quotations omitted).  Further,

"a plaintiff must demonstrate, with specificity, affirmative acts by the interferer which

corroborate the unlawful purpose of the interference."  Id. at 779; see also Henslee,

Monek, & Henslee v. D.M. Central Transp, Inc., 870 F. Supp 764, 766 (E.D. Mich.

1994).

Defendants argue that this claim must be dismissed because plaintiffs do not

identify how any terms of any agreement were breached; or any per se wrongful acts or

any acts undertaken with malice.  This argument is well taken.  First, neither the

mortgage nor the note contemplate any required modification of the loan.  Moreover, the

purported "breach" appears to surround the HUD regulations which, as discussed

above, do not state a claim for relief.  Count 4 must be dismissed.

### D.  Count 5 - Civil Conspiracy

Defendants argue that plaintiffs' claim for conspiracy should be dismissed

because conspiracy, by itself, is not a cause of action.  The Court agrees.   "A civil

conspiracy is a combination of two or more persons, by some concerted action, to

accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal

or unlawful means."  Admiral Ins Co v. Columbia Cas. Ins. Co., 194 Mich. App. 300, 313

(1992). "[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to

prove a separate, actionable tort." Advocacy Org. for Patients & Providers v. Auto Club

Ins. Ass'n, 257 Mich. App. 365, 384 (2003) (internal quotations omitted).  Because

plaintiffs have not stated any separate viable tort claims, a civil conspiracy claim.

Moreover, conspiracy allegations must be stated with some specificity.  See

Farhat v. Jopke, 370 F.3d 580, 599 (6th Cir. 2004).  Here, plaintiffs have failed to plead

any specific allegations with respect to the purported conspiracy. Count 5 must be dismissed.

### E. Count 6 - RESPA

In Count 6, plaintiff claim violations of the Real Estate Settlement Procedures Act (RESPA). Defendants argue this claim fails because the alleged acts described by plaintiffs are not governed by RESPA. For example, plaintiffs allege that defendants violated 12 U.S.C. § 2607,5 which concerns illegal kickbacks for business referrals. (Amended Complaint at ¶ 87.) These allegations, however, concern a purported "bailout" scheme related to the foreclosure of the loan. (Id. at ¶ 88.) Even assuming the validity of these allegations, the "violations" are not a part of RESPA.

Plaintiffs also cite 12 U.S.C. § 2605 without identifying any violation of the statute. To the extent plaintiffs attempt to state a violation of § 2605, this claim must be dismissed because they have not pleaded any facts illustrating how they were damaged as a result of any purported violation. 12 U.S.C. § 2605(f)(1); Battah v. ResMae Mortgage Co., 746 F. Supp. 2d 869, 876 (E.D. Mich. 2010) ("To successfully plead a RESPA claim, Plaintiff must allege actual damages[.]")

### F. Count 7 - Violation of the Mortgage Brokers, Lenders, and Servicers Licensing Act

Defendants argue that Count 7 should be dismissed because plaintiffs have failed to properly plead a violation of the Mortgage Brokers, Lenders, and Servicers Licensing Act (MBLSLA). The Court agrees. The Amended Complaint does not identify how or when CMI or Freddie Mac purportedly violated the MBLSLA. (Amended Complaint at ¶¶ 91-93.) Rather, plaintiffs simply allege a list of prohibited activities under the MBLSLA, without identifying which sections were purportedly violated, without

pleading any factually basis for the violations, and without identifying which defendant violated the act.  A formulaic recitation of the elements of a cause of action is insufficient to state a claim.  See Twombly, 550 U.S. at 555.

Moreover, this claim is subject to dismissal because the MBLSLA does not apply to Freddie Mac, and was not applicable to CMI at the time the alleged violated occurred. The MBLSLA does not apply to a corporate instrumentality of the United States, such as Freddie Mac. M.C.L. 445.1675(f) ("This act does not apply to . . . corporate instrumentalities of the United States[.]").  Section 445.1675(a) of the MBLSLA states that the Act does not apply to "[a] depository financial institution whether or not the depository financial institution is acting in the capacity of a trustee or fiduciary." A "depository financial institution" includes "a state or nationally chartered bank, a state or federally chartered savings and loan association, savings bank, or credit union, or an entity of the federally chartered farm credit system." M.C.L. §445.1651a(f).  CMI is a national banking association chartered under the National Bank Act and it is therefore exempt from the MBLSLA.[6]

Additionally, to the extent that are alleging that CMI violated the MBLSLA related to its duties under the Housing and Economic Recovery Act (HERA) and the Federal Home Affordable Modification Program (HAMP) Servicer Participation Agreement

_____

[6]As defendants point out, this exemption appears to have been removed by the Dodd-Frank Act.  However, this change was not effective until July 21, 2011. 12 U.S.C. § 25b(e); Dodd-Frank Act, Title X, Section 1048 (section effective on "designated transfer date."); 75 FR 57252 (July 21, 2011 is the designated transfer date).  Nothing in the Dodd-Frank Act suggests it has retroactive effect.  Because plaintiffs' complaint appears to concern events occurring before July 21, 2011, plaintiffs' claim against CMI is still subject to dismissal.

(SPA), such a claim fails.  First, the statutes do not compel CMI to modify a loan.  HERA requires the Secretary of the Treasury "to encourage the servicers of the underlying mortgages, considering net present value to the taxpayer, to take advantage of the HOPE for Homeowners Program."  12 U.S.C. § 5219.  While under the statute "the Secretary must encourage mortgage servicers to modify loans, the statute does not require Defendant or other mortgage servicers to modify loans."  Hart v. Countrywide Home Loans, Inc., 735 F. Supp. 2d 741, 747-48 (E.D. Mich. 2010) (dismissing claims under HERA and HAMP); Escobedo v. Countrywide Home Loans, Inc., No. 09cv1557 BTM (BLM), 2009 WL 4981618, at *3 (S.D. Cal. Dec. 15, 2009) ("The Agreement does not state that Countrywide must modify all mortgages that meet the eligibility requirements."); Williams v. Geithner, No. 09-1959 ADM/JJG, 2009 WL 3757380, at *6 (D. Minn. Nov. 9, 2009) (concluding that loans may be modified where appropriate and with discretion).  Thus, even if plaintiffs were entitled to a modification, there would be no duty imposed on CMI for which they could seek relief.

Second, even assuming plaintiffs were eligible for a modification and assuming the statutes impose a duty on CMI to modify the mortgage, the statutes "do not create a private right of action under which Plaintiff may seek relief."  Hart, supra.  See also Aleem v. Bank of America, No. EDCV 09-01812-VAP (RZx), 2010 WL 532330, *4, 2010 U.S. Dist. LEXIS 11944, *12 (C.D. Cal. Feb. 9, 2010) ("There is no express or implied right to sue fund recipients ... under TARP or HAMP.); Zendejas v. GMAC Wholesale Mortgage Corp., No. 1:10-CV-00184 OWW GSA, 2010 WL 2490975 (E.D. Cal. June 16, 2010) (concluding that third-party beneficiaries cannot enforce government contracts "absent a clear intent to the contrary," and that HAMP expresses no such intent).

13

Overall, plaintiffs' claim concerning a purported violation of HAMP must be dismissed.

### G.  Count 8 - Unclean Hands

In Count 8, plaintiffs claim a violation of the unclean hands doctrine.  This count fails to state a claim.  The doctrine is not a cause of action; rather, it is a defense that "depends upon the connection between the complainant's iniquitous acts and the defendant's conduct which the complainant relies upon as establishing his cause of action."  Wuliger v. Manufacturers Life Ins. Co., 567 F.3d 787, 797 (6th Cir. 2009).  "The clean hands maxim is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant."  Stachnik v. Winkel, 394 Mich. 375, 382, 230 N.W.2d 529 (1975) (internal modifications omitted).  The doctrine merely prevents a plaintiff with unclean hands from recovering from a defendant.  As such, it is not a basis for affirmative relief.  Count 8 must be dismissed.

### H.  Count 9 - Breach of Contract - Implied Duty of Good Faith and Fair Dealing[7]

In Count 9, plaintiffs claim breach of contact and breach of the implied duty of god faith and fair dealing.  Regarding a breach of contract claim, plaintiffs must "establish all of the elements for a contract . . . ."  Pawlak v. Redox Corp., 182 Mich. App. 758, 765 (1990).  A valid contract requires "(1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5)

---

[7]Plaintiffs suggest that defendants did not address this claim in their motion Plaintiffs are mistaken.  See Doc. 10, Defendants' brief at p. 12.

14

mutuality of obligation." Hess v. Canton Twp., 265 Mich. App. 582, 592 (2005) (internal quotations omitted).  Here, as discussed above with respect to plaintiffs' interference with contractual relations claim, plaintiffs have failed to allege a breach by defendants. See Section IV.C., supra.  This claim must be dismissed.

As to a claim for breach of the covenant of good faith and fair dealing, Michigan law simply "does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing."  Fodale v. Waste Management of Michigan, Inc., 271 Mich. App. 11, 35 (2006) (citing Belle Isle Grill Corp. v. Detroit, 256 Mich. App. 463, 476 (2003)).  However, the covenant can be read into a contract when "a party to a contract makes the manner of its performance a matter of its own discretion."  Ferrell v. Vic Tanny Intern., Inc., 137 Mich. App. 238, 243, 357 N.W.2d 669, 672 (1984).  Where a complainant fails to allege the contract at issue leaves the manner of performance to a defendant's discretion, such a claim is properly dismissed.  McLiechey v. Bristol West Ins. Co., 408 F. Supp. 2d 516 (W.D. Mich. 2006).

Here, plaintiffs have not alleged that the mortgage left the manner of performance to defendants' discretion.  Thus, plaintiffs have not stated a claim for breach of the implied covenant of good faith and fair dealing.  Count 9 must be dismissed.

### I.  Count 11 - Fair Debt Collection Practices Act

In Count 11, plaintiffs plead a violation of the Fair Debt Collection Practice Act (FDCPA).  Defendants argue that this claim fails because plaintiffs have not plead the elements of this claim or shown that it applies to defendants.

Liability under the FDCPA liability is limited to debt collectors.  A "debt collector"

15

is defined as:

> any person who uses any instrumentality of interstate commerce or
> the mails in any business the principal purpose of which is the
> collection of any debts, or who regularly collects or attempts to collect,
> directly or indirectly, debts owed or due or asserted to be owed or due
> another… the term includes any creditor who, in the process of collecting
> his own debts, uses any name other than his own which would indicate
> that a third person is collecting or attempting to collect such debts.

15 U.S.C. 1692a(6).  A "debt collector" is not one who attempts to collect its own debt.

See Montgomery v. Huntington Bank, 346 F.3d 693, 698-99 (6th Cir. 2003) ("A creditor

is not a debt collector for purposes of the FDCPA and creditors are not subject to the

FDCPA when collecting their accounts.").  See also, Wadlington v. Credit Acceptance

Corp., 76 F.3d 103, 104 (6th Cir. 1996) ("A debt collector does not include the

consumer's creditors.").

Here, CMI is not considered a debt collector under the FDCPA unless the loan in

question was in default at the time CMI acquired its interest in the loan.  King v. Ocwen,

No. 07-11359, 2009 WL 724062, at *4 (E.D. Mich. Mar. 18, 2009) (unpublished).  As

explained above, CMI is the successor by merger to ABN AMRO, the originating lender

and mortgagee, and therefore it is impossible for the loan to have been in default at the

time CMI received its interest.  See, e.g., Dues v. Capital One, N.A., No. 11 – CV –

11808, 2011 WL 3799762, at * 4 (E.D. Mich. Aug. 8, 2011) (unpublished) (debt not

obtained for purposes of FDCPA through merger).

Furthermore, plaintiffs have not plead any facts illustrating what purported debt

collection activities CMI undertook, or how these activities violated the FDCPA.  Instead,

plaintiffs merely recite elements from the statute, which is insufficient to state a claim.

Iqbal, 129 S.Ct. at 1949.  To the extent plaintiffs' various, unspecified FDCPA claims

16

concern the enforcement of the mortgage, these claims fail because the

FDCPA are not applicable to the enforcement of a security interest, because the

FDCPA does not consider foreclosure to be debt collection. See, e.g. Gray v. Four Oak

Court Ass'n, Inc., 580 F. Supp. 2d 883, 888 (D. Minn. 2008) ("enforcement of a security

interest, including a lien foreclosure, does not constitute the 'collection of any debt.'");

Montgomery v. Huntington Bank, 346 F.3d 693, 700 (6th Cir. 2003) ("Congress drew a

distinction between a debt collector and an enforcer of a security interest" (internal

quotations omitted)).  Plaintiffs' FDCPA claim must be dismissed.

### J.  Count 12 - Michigan's Occupational Code

Defendants contend that plaintiffs' claim for violation of the Michigan

Occupational Code (MOC) claim fails for the same reasons as plaintiffs' FDCPA claim.

The Court agrees.  The MOC does not apply to "a person whose collection activities are

confined and are directly related to the operation of a business other than that of a

collection agency . . . ." M.C.L. 339.901(b).  Plaintiffs have not plead any facts

nor offered any theory as to how this act could apply to CMI or Freddie Mac, neither of

which is a collection agency.  Moreover, plaintiffs fail to plead any facts showing how

CMI or Freddie Mac violated the MOC, and instead merely recite the elements of the

statute.  Unsupported allegations cannot survive a motion to dismiss. See Iqbal, 129 S.

Ct. at 1949.  Count 12 must be dismissed.

### K.  Counts 13 and 14 - Fraud Claims

Plaintiffs' misrepresentation claims, under Counts 13 and 14, concern the alleged

actions and inactions of CMI (not Freddie Mac), with respect to an alleged promise to

modify the loan. (Amended Complaint at  ¶¶ 119-133.)  In Counts 13 and 14, plaintiffs

17

allege that CMI committed "intentional fraud" and/or "constructive fraud" when it represented to plaintiffs that they would be granted a loan modification.  These claims fail for several reasons.

To succeed on a claim for fraud, plaintiffs must plead and prove that "(1) Defendant made a material representation; (2) the representation was false; (3) when the representation was made, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage.'" M & D, Inc. v. McConkey, 231 Mich. App. 22, 27 (1998).   "Constructive fraud" differs from intentional misrepresentation only in that constructive fraud "only requires a misrepresentation which need not amount to a purposeful design to defraud." General Elec. Credit Corp. v. Wolverine Ins. Co., 420 Mich. 176, 188 (1984). "[A] person who unreasonably relies on false statements should not be entitled to damages for misrepresentation." Novak v. Nationwide Mut. Ins. Co., 235 Mich. App. 675, 690 (1999). It is not reasonable to rely on representations that contradict the express terms of a contract.  Id. at 689-91.

First, CMI did not make a false representation.  At best, plaintiffs' fraud claims concern an alleged broken promise of a future loan modification.  However, "an action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact."  Hi-Way Motor Co. v. Int'l Harvester Co., 398 Mich. 330, 336 (1976). "Future promises are contractual and do not constitute fraud."  Id. See also, Derderian v. Genesys Health Care Sys., 263 Mich. App. 364, 381 (2004) ("[b]ecause plaintiffs' claims rely on promises of future conduct, summary disposition was appropriate").

18

Plaintiffs allegations that they were promised a future loan modification simply is not actionable as fraud.  Moreover, the alleged promises contradict the express terms of the note and mortgage, which cannot support a fraud claim.  <u>Novack</u>, 235 Mich. at 689-91.

Second, plaintiffs' fraud claims, which sound in tort, are precluded by the rule that prevents pursuing a tort remedy when the parties' relationship is governed by a contract.  <u>See, e.g., Sherman v. Sea Ray Boats, Inc</u>., 251 Mich. App. 41, 50 (2002) ("Michigan case law expressly provides that an action in tort may not be maintained where a contractual agreement exists, unless a duty, separate and distinct from the contractual obligation, is established."); <u>Garden City Osteopathic Hosp. v. HBE Corp</u>., 55 F.3d 1126, 1134 (6th Cir. 1995) ("'Michigan law' is well settled that an action in tort requires a breach of duty separate and distinct from a breach of contract.").  Plaintiff has not pled any duty owed to him by defendants that is independent from the parties' contractual relationship found in the note and mortgage.

Third, the fraud claims are subject to dismissal under the statute of frauds.  In Michigan, certain types of agreements must be in writing before they can be enforced. <u>Crown Technology Park v. D&N Bank, F.S.B.</u>, 242 Mich. App. 538, 548 (2000).  The burden of proving an enforceable agreement is even heavier when claiming against a financial institution.  Specifically, M.C.L. § 566.132(2) provides, in relevant part, that an action cannot be brought against a financial institution to enforce any "financial accommodation," unless the promise or commitment "is in writing and signed with an authorized signature by the financial institution."  In <u>Crown Technology</u>, the plaintiff sued the defendant bank to enforce an alleged unwritten promise by the bank to waive a prepayment penalty provision in the plaintiff's mortgage loan.  The court of appeals held

19

that section 132(2) barred the plaintiff's promissory estoppel claim, stating that section 32(2) "plainly states that a party is precluded from bringing a claim--no matter its label--against a financial institution to enforce the terms of an oral promise to waive a loan provision." Id. at 550. In reaching its conclusion, the court of appeals noted that its ruling extended beyond promissory estoppel claims, and that §132(2) barred all unwritten promises, regardless how such claims were labeled, explaining:

> However, as we noted above, the Legislature used the broadest possible language in M.C.L. § 566.132(2); M.S.A. 26.922(2) to protect financial institutions by not specifying the types of "actions" it prohibits, eliminating the possibility of creative pleading to avoid the ban.

Id. at 551.

Here, M.C.L. 566.132(2) bars plaintiffs' fraud claims because plaintiffs have not alleged the existence of any documentary evidence signed by an authorized representative of CMI indicating that they would receive a financial accommodation in the form of a loan modification. Because plaintiff's fraud claims would require the Court to enforce alleged oral promises and representations in contravention of the statute of frauds, Counts 13 and 14 fail.

### L.  Count 15 - Promissory Estoppel

Defendants contend that plaintiffs' promissory estoppel claim should be dismissed because plaintiffs have not pled the requisite elements and it is barred by the statute of frauds.

A claim of promissory estoppel requires:

> (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if

20

injustice is to be avoided.

To support a claim of estoppel, a promise must be definite and clear." <u>Schmidt v.</u>

<u>Bretzlaff</u>, 208 Mich. App. 376, 378 (1995).

Here, plaintiffs have not identified any clear or definite promise to modify the

loan.  Instead, plaintiffs merely conclude that promises were made, without pleading any

of the underlying facts in support. (Amended Complaint at  ¶¶ 13-18.)  This is

insufficient to state a claim.

Moreover, the claim is based on an unwritten agreement by CMI to consider

plaintiffs for a loan modification.  As explained above with respect to plaintiffs' fraud

claims, a promissory estoppel claim is also barred by the statute of frauds.  <u>See</u> M.C.L.

566.132(2); <u>Crown Tech Park</u>, 242 Mich. App. at 550.  Overall, Count 15 must be

dismissed.

### M.  Count 16 - Michigan Consumer Protection Act

In Count 16, plaintiffs claim a violation of the Michigan Consumer Protection Act

(MCPA).  This claim must be dismissed because the MCPA does not apply to mortgage

transactions.  Under the MCPA, "[a] transaction or conduct specifically authorized under

laws administered by a regulatory board or officer acting under statutory authority of this

state or the United States" is exempt from the MCPA.  M.C.L. § 445.904(1)(a); <u>see also</u>

<u>Newton v .Bank West</u>, 262 Mich. App. 434, 442, 491 (2004).  In <u>Newton</u>, the Court of

Appeals stated:

> [W]hen the Legislature said that transactions or conduct
> "specifically authorized" by law are exempt from the MCPA, it
> intended to include conduct the legality of which is in dispute . . .
> we conclude that the relevant inquiry is not whether the specific
> misconduct alleged by the plaintiffs is "specifically authorized."

> Rather, it is whether the general transaction is specifically
> authorized by law, regardless of whether the specific misconduct is
> prohibited.

Id. at 438 (quoting Smith v. Globe Life Ins. Co., 460 Mich. 446, 465 (1999))

(modifications & emphasis in original).

Here, as explained above, CMI is a national banking association that is chartered

and governed by the National Bank Act, 12 U.S.C. § 371(a), which authorizes national

banking associations to "make, arrange, purchase or sell loans or extensions of credit

secured by liens on interests in real estate."  Courts have consistently applied the

MCPA exemption to the mortgage business of regulated lending institutions.  See

Newton, 262 Mich. App. at 438 ("[W]e conclude that the residential mortgage loan

transactions fit squarely within the exemption."); Hanning v. Homecomings Fin.

Networks, Inc., 436 F. Supp. 2d 865, 869 (W.D. Mich. 2006) (holding defendants are

"licensed mortgage lenders; Berry v. Bank of America, N.A., 2009 WL 4950463 (E.D.

Mich. Dec. 16, 2009) ("the MCPA does not apply to residential loan transactions.").

Because CMI's business as a mortgage lender and servicer is subject to oversight by

the OCC, the MCPA does not apply to it.  As to Freddie Mac, the MCPA specifically

exempts itself from applying to "[a] transaction or conduct specifically authorized under

laws administered by a regulatory board or officer acting under statutory authority of this

state or the United States." M.C.L. 445.904(1)(a).  Freddie Mac is a government

sponsored entity subject to the oversight of the Federal Housing Finance Agency.

Thus, plaintiffs' claim against defendants under the MCPA fails.

Additionally, plaintiffs have failed to plead any facts in support of the claim, and

do not identify how or when CMI or Freddie Mac purportedly violated the act. (Amended

Complaint at ¶¶ 141-143.)  Instead, Plaintiffs offer nothing more than a recitation of lists of prohibited activities under the MCPA, without identifying which sections were purportedly violated, without pleading any factually basis for the purported violations, and without identifying which defendant purportedly violated the acts.  This is insufficient to state a claim.  See Twombly, 550 U.S. at 555; Iqbal, 129 S.Ct. at 1949.

### N.  Count 17 - Unjust Enrichment

Count 17 claims unjust enrichment.  However, plaintiffs have not plead any facts suggesting that CMI or Freddie Mac have been unjustly enriched in any fashion.  A claim of unjust enrichment requires "(1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant."  Barber v. SMH (US), Inc., 202 Mich. App. 366, 375 (1993).  The Amended Complaint does not contain any allegations concerning improper benefit received by CMI or Freddie Mac to the detriment of plaintiffs.  At best, plaintiffs allege that every payment made they under the Loan for the last three years somehow constitutes unjust enrichment. (Amended Complaint at ¶ 146.)  However, plaintiffs agreed to repay the loan under both the note and the mortgage.  Plaintiffs simply have not stated a claim for unjust enrichment.

Moreover, a claim of unjust enrichment cannot proceed where there is an express contract covering the subject matter; they are only applicable where a contract is implied.  Fodale v. Waste Management of Michigan, Inc., 271 Mich. App. 11, 36 (2006).  Here, the case is governed by express written agreements, including the mortgage and note.

Overall, Count 17 fails to state a viable claim.

23

## V.  Conclusion

For the reasons stated above, plaintiffs have not stated a plausible claim for relief against defendants relating to the mortgage and foreclosure proceedings.  Accordingly, defendants' motion to dismiss is GRANTED.  This case is DISMISSED.

SO ORDERED.


 s/Avern Cohn_____
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated:  February 16, 2012


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, February 16, 2012, by electronic and/or ordinary mail.


 s/Julie Owens_____
Case Manager, (313) 234-5160